IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DOROTHY FARBO | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. WDQ-05-2409 |
| WARDEN BRENDA SHELL | * | |
| DR. SEYOUM | | |
| MS. THORNWELL, CHA | * | |
| MARVIN BRUCE, PA | | |
| MS. PERRY, RN | * | |
| MS. BELL, RN | | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM**

I. *Background*

This 42 U.S.C. § 1983 prisoner civil rights action for damages alleges the denial of medical care at the Maryland Correctional Institution for Women in Jessup ("MCIW"). Plaintiff claims that on June 3, 2005, a bottle of shampoo fell on the bridge of her foot from a shelf about 5 ½ feet high, and she experienced immediate swelling, pain, and bruising and could not place any weight on her foot. Paper No. 1. She claims that she did not receive a response to her June 7, 2005 sick-call slip, and the following day walked to the dispensary in extreme pain and "begged" to be provided an ace bandage. *Id*. Plaintiff seemingly states that the ace bandage was grudgingly provided to her by Nurse Perry on June 8, 2005. *Id*.

Plaintiff further alleges that after repeated sick-call requests and a letter sent to Ms. Thornwell, an x-ray was ordered and taken around June 23, 2005, some three weeks after her injury. *Id*. She complains that when she questioned Physician's Assistant ("P.A.") Bruce on June 27, 2005, he indicated that the x-ray results could not be located, but that her injury was a "bad bruise" and she should "quit whining." *Id*.

Plaintiff further states that on July 13, 2005, she fell on a damaged piece of sidewalk,[1] twisted her already injured foot, and was taken to the Maryland House of Correction ("MHC") for an x-ray. Paper No. 1. She claims that on July 15, 2005, she was called into Dr. Seyoum's office and informed that she had "mild osteoporosis." Plaintiff complains that: (i) the July 13, 2005 x-ray report referenced an "old fracture" mentioned in her June, 2005 x-ray report; (ii) she was given a mismatched set of crutches she could not use although five other sets of crutches were available; and (iii) although she was to be referred to an orthopedist for a cast, no action has been taken.[2] *Id*.

Plaintiff essentially claims that: Defendants knowingly forced her to walk around in pain with a fractured foot for several weeks; the refusal to provide her treatment compromised her mobility and caused her to fall and sustain additional injury; and she was denied proper follow-up care.

Defendant Shell, as well as Defendants Seyoum, Thornwell, Bruce, Perry, and Bell ("Medical Defendants"), filed Motions to Dismiss or, in the Alternative, for Summary Judgment. Paper Nos. 14, 19, & 22. Plaintiff filed Oppositions thereto. Paper Nos. 18 & 21. A hearing is not needed to resolve the constitutional issues presented in the matter. *See* Local Rule 105.6. (D. Md. 2004). For reasons which follow, the Court shall grant Defendants' Motions.

II. *Standard of Review*

   *Motion for Summary Judgment*

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*

---

[1] Plaintiff claims that no action was taken to fix the sidewalk. Paper No. 1.

[2] Attached to the Complaint are letters and remedies allegedly sent to Warden Shell.

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In alleging that she was denied his Eighth Amendment right to necessary medical care Plaintiff must prove two essential elements. First, she must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, she must then prove the second "subjective" component of the Eighth Amendment standard by showing deliberate indifference on the part of Defendants. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Medical staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that

the risk to which the facts gave rise was insubstantial or nonexistent."[3]  *Id*. at 844; *see also Johnson*

*v. Quinones*, 145 F.3d at 167.

"[A]ny negligence or malpractice on the part of ....doctors in missing [a] diagnosis does not,

by itself, support an inference of deliberate indifference."  *Johnson v. Quinones* 145 F. 3d at 166.

Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical

condition, the subjective knowledge required for Eighth Amendment liability is not present.  *Id*. at

169 (actions inconsistent with an effort to hide a serious medical condition refute presence of

doctor's subjective knowledge).

III.    *Analysis*

The Medical Defendants argue that Plaintiff received constitutionally adequate medical care.

According to their materials, on June 12, 2005, Plaintiff submitted a sick-call request for renewal

of her cardiac diet and did not complain of any problem with her foot.[4]  Paper No. 14, Ex. A.  On

June 14, 2005, Plaintiff was evaluated by Nurse Perry for her complaint of a left foot injury resulting

when she dropped a deodorant stick on her foot two days before.[5]  *Id*.  In her notes, Nurse Perry

indicated that Plaintiff's foot was slightly swollen with some bruising near her toes and that Plaintiff

could put pressure on her foot, but could not lean forward on it.  *Id*.  Perry obtained a verbal order

---

[3]     42 U.S.C. § 1983 liability on the part of the supervisory defendants requires a showing that:  "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations."  *Miltier v. Beorn*, 896 F. 2d at 854 (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984) (supervisory liability for an inmate's beating by prison guards).

[4]     The medical records reflecting sick-call requests, progress notes, physicians' orders, formulary requests, radiology consults, medical releases and assignments are attached as exhibits to the Medical Defendants' dispositive motions.  *See* Paper No. 14, Ex. B; Paper No. 19, Exs.  1-6.

[5]     The Medical Defendants state that while Plaintiff filed three sick-call request forms as attachments to her Complaint, these forms are not contained in Plaintiff's medical records from MCIW.  Paper No. 14 at 7, n.3.

from P.A. Bruce to apply an ace wrap to support the foot and to give Plaintiff a cold pack to reduce the swelling. Paper No. 14, Ex. A. Nurse Perry further noted that Plaintiff was already receiving a non-steroidal anti-inflammatory ("NSAID") medication for her osteoporosis, *e.g.*, Indocin. *Id.*

According to the Medical Defendants' record, Plaintiff did not show up to be examined by P.A. Bruce on June 14 or June 15, 2005. *Id.* On June 19, 2005, Nurse Campbell evaluated Plaintiff for her complaint that she dropped books on her foot. Campbell noted that Plaintiff's foot was swollen and severely painful, and that Plaintiff was unable to move her toes and walked with an unsteady gait. *Id.* Campbell scheduled Plaintiff for next-day evaluation by P.A. Bruce and noted that she had already been provided an ace wrap and ice pack. *Id.* Campbell also gave Plaintiff Motrin, another form of NSAID, for pain. *Id.*

On June 20, 2005, P.A. Bruce examined Plaintiff and noted that she injured her left foot on June 2, 2005, when something fell on it. *Id.* He observed that Plaintiff's food was tender over the distal metatarsals. *Id.* He diagnosed the injury as a contusion, and nonetheless ordered an x-ray and gave Plaintiff Indocin for the pain. *Id.*

Dr. Seyoum examined Plaintiff in the Chronic Care Clinic on June 22, 2005, for her asthma and osteoporosis.[6] *Id.* At that time Plaintiff mentioned that something had fallen on her foot two or three weeks earlier. *Id.* Dr. Seyoum noted that the pulses in her foot were good and that there was no deformity of the foot. *Id.* She ordered a foot x-ray. The x-ray taken on June 23, 2005, revealed a "subtle or occult fracture of the distal shaft of the second metatarsal." *Id.* The Medical Defendants indicate that the third metatarsal was intact. *Id.*

---

[6]   According to Dr. Seyoum's affidavit, Plaintiff has been diagnosed with asthma, degenerative joint disease of the back and knees, occasional migraine headaches, osteoporosis, scoliosis, and super ventricular tachycardia.   Paper 19, Seyoum Aff.   Plaintiff is allergic to codeine and penicillin. *Id.*

The Medical Defendants indicate that Plaintiff was examined by P.A. Bruce on June 29, 2005, based upon the receipt of a sick-call slip on June 21, 2005. Paper No. 14, Ex. A.  Bruce noted that Plaintiff's third metatarsal was still tender and swollen and assessed the injury as a contusion. *Id*.  He educated Plaintiff about her injury and advised her to follow-up with care as needed.

Plaintiff underwent a repeat x-ray of her left foot on July 13, 2005.  The x-ray showed an "old" fracture of the mid-shaft of the second metatarsal with mild callous (new bone) formation, when compared to the x-ray of June 23, 2005, and diffuse mild osteoporosis. *Id*.  Dr. Seyoum saw Plaintiff on July 15, 2005, for a follow-up evaluation of her x-ray.  Her examination revealed: (i) no deformity of Plaintiff's left foot; (ii) normal pulses to Plaintiff's foot; (iii) full movement of all toes on Plaintiff's left foot; and (iv) normal sensation in Plaintiff's foot. *Id*., Ex. A.  Seyoum ordered Nubain, an analgesic, to control her pain and advised her to continue to use the ace wrap. *Id*.  She also gave Plaintiff crutches and told her not to bear weight on her left foot.

According to the Medical Defendants' exhibits, Seyoum recommended an orthopedic consultation, but Plaintiff did not want to go to MHC for this evaluation because she did not want to be shackled. *Id*.  Seyoum maintains that she provided Plaintiff with the treatments that were available at MCIW, *e.g.*, ace wrap, ice pack, NSAIDs, analgesics, and crutches. *Id*.

Plaintiff was again examined by Seyoum on July 29, 2005.  The medical record reflects that Plaintiff indicated that she was much better and felt fine and Seyoum found the pulses, sensation, and motion of her foot were all normal. *Id*.  Seyoum states, however, that Plaintiff continued to voice her reluctance to see the orthopedic surgeon. *Id*.  Seyoum affirms that she told Plaintiff that staff would continue the treatment plain on NSAIDs, vitamin D, calcium, and Fosamax.  Paper No. 19 at Seyoum Aff.  A repeat x-ray was scheduled for six to eight weeks, with a follow-up examination in September of 2005.  Paper No. 14, Ex. A.

On September 29, 2005, a repeat x-ray was taken. The x-ray showed moderate callous formation of the second metatarsal and a fracture of the distal shaft of the third metatarsal with early callous formation. Paper No. 14, Ex. A. These fractures were not out of alignment. The Medical Defendants state that surgery for fractures of the second or third metatarsals is only required if there is significant displacement of the bone. *Id*. Indocin was reordered for Plaintiff's foot discomfort. *Id*. Another x-ray, taken on October 6, 2005, showed "old healing fractures" of the second and third metatarsals with moderate callous (new bone) formations, unchanged since the September 29, 2005 x-ray. *Id*.

For her part Warden Shell indicates that there are no facts raised in the Complaint that show that she interfered with, denied, or delayed Plaintiff's medical treatment. Paper No. 22. She further argues that she is entitled to summary judgment on the basis of Plaintiff's failure to show that: (i) her constitutional right to adequate medical care was violated; and (ii) Shell violated a clearly established constitutional right of which a reasonable public official should have known.

In her unverified Opposition, Plaintiff claims her initial sick-call requests were never processed and that she was forced to walk around on institutional grounds in severe pain and discomfort. Paper No. 21. Plaintiff further states that at no time was she ever summoned to the infirmary for a follow-up appointment on June 14 or June 15, 2005, and she disputes Dr. Seyoum's affirmations that she had declined orthopedic consults and had indicated that she was feeling better as suggested by the July 29, 2005 progress notes. *Id*. Plaintiff questions why she was not provided a cast in spite of her repeated requests and maintains that Seyoum assured her that a walking cast would be applied. *Id*.

While there is some question as to what item(s) fell on Plaintiff's left foot, *e.g.*, shampoo, deodorant, or books, there is no dispute that Plaintiff sustained an injury to a metatarsal bone. The

7

records demonstrate that upon receipt of her June, 2005 sick-call complaint for such an injury, Plaintiff was provided an ace wrap, ice pack, and NSAIDs. She was repeatedly evaluated by nurses and a P.A. The Medical Defendants state that approximately nine days after receipt of Plaintiff's sick-call request her foot was x-rayed. A fracture of the second metatarsal bone was noted. Plaintiff was continued on NSAIDs and pain analgesics and was also provided crutches. A repeat x-ray was performed in July of 2005. It revealed no bone displacement and callous formation (healing) at the fracture site. Dr. Seyoum affirms that surgery was found to be medically unnecessary because of the absence of a bone displacement. Plaintiff's allegations to the contrary, there are no physician notations or progress notes indicating the need for a cast. Objective follow-up examinations in July of 2005 found no deformity. Normal movement, pulsation, and sensation of the left foot were noted. Further, the records indicate that by July 29, 2005, Plaintiff voiced no subjective complaints and indicated that she felt better.[7] A follow-up x-ray conducted on September 29, 2005, showed moderate callous formation of the second metatarsal and revealed for the first time a fracture of the distal shaft of the third metatarsal with early callous formation.[8] Another x-ray, taken one week later, was unchanged.

Clearly, Plaintiff received constitutionally adequate medical care given her sick-call complaints and the evaluations, examinations, medication, and radiology testing received from nurses, a P.A., and physicians. Any issue concerning the initial misdiagnosis of her injury is not colorable under 42 U.S.C. § 1983.

III.   *Conclusion*

---

[7]   While Plaintiff disputes Dr. Seyoum's affidavit and the progress note entries regarding her subjective statements of recovery and her declining orthopedic consults, her statements are not presented under oath or affirmation. In any event, she fails to provide evidence showing that she submitted sick-all requests or continued to complain of her foot injury subsequent to July of 2005.

[8]   Plaintiff indicates that she had re-injured the foot when falling on the sidewalk. Paper No. 18.

For the aforementioned reasons, Defendants' Motions to Dismiss or for Summary Judgment are hereby granted.   Judgment is entered in favor of Defendants and against Plaintiff.  A separate Order follows.

Date: <u>July 10, 2006</u>                                         <u>          /s/                   </u>
                                                                                William D. Quarles, Jr.
                                                                                United States District Judge